RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0063P (6th Cir.)
File Name: 02a0063p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

GARY ARNETT, et al.,
    *Plaintiffs-Appellants,*

    *v.*

GARY T. MYERS, Executive
Director of the Tennessee
Wildlife Resources Agency, et
al.,
    *Defendants-Appellees.*

No. 00-5178

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 98-01263—James D. Todd, Chief District Judge.

Argued: April 26, 2001

Decided and Filed: February 21, 2002

Before: SILER and MOORE, Circuit Judges; STAGG,*
District Judge.

---

* The Honorable Tom Stagg, United States District Judge for the Western District of Louisiana, sitting by designation.

―――――――――――

**COUNSEL**

**ARGUED:** Lance E. Webb, Dyersburg, Tennessee, for Appellants.   Elizabeth P. McCarter, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees.  **ON BRIEF:** Lance E. Webb, Dyersburg, Tennessee, for Appellants.  Elizabeth P. McCarter, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees.

―――――――――――

**OPINION**

―――――――――――

STAGG, District Judge.  Plaintiffs-appellants Gary Arnett, Shelly Arnett, and John Paul Arnett, by next friend Gary Arnett, brought this action pursuant to 42 U.S.C. § 1983 against Gary Myers, Executive Director of the Tennessee Wildlife Resources Agency ("TWRA"), and the members of the Tennessee Wildlife Resources Commission ("TWRC") in their official capacities; against Harold Hurst, Gary Cook, Paul Brown, and Ronnie Capps, employees of the TWRA, in their individual capacities; and against Robert Baker, an employee of the Tennessee Department of Environment and Conservation ("TDEC") in his individual capacity.   The plaintiffs-appellants sought declaratory and injunctive relief, contending that the removal of their duck blinds from Reelfoot Lake in Obion County, Tennessee by the defendant-appellee employees of the TWRA (1) denied them procedural due process, equal protection, and just compensation for a taking under the Fifth, and Fourteenth Amendments; (2) denied them of their right to conduct a commercial aquaculture business and deprived them of their property rights under the Fifth and Fourteenth Amendments; and (3) constituted retaliation for the exercise of Gary Arnett's First Amendment rights in criticizing the TWRA's management of Reelfoot Lake.  In two separate opinions, the district court granted summary judgment to the defendants-

Eleventh Amendment sovereign immunity does not bar the Arnetts' claims in this case. The Arnetts seek prospective equitable relief to enjoin Tennessee officials from committing continuing violations of federal law, namely violation of their rights under the Fifth and Fourteenth Amendments. The *Ex Parte Young* exception applies in this case, and *Coeur d'Alene* does not dictate a contrary result.

### III.    CONCLUSION

For the foregoing reasons, we REVERSE the district court's dismissal of the Arnetts' First Amendment claims and its holdings that the Arnetts' Fifth and Fourteenth Amendment claims are not ripe for review and that the Arnetts had no constitutionally protected property interest in the duck blinds to which they claim ownership. We REMAND to the district court for further proceedings.

appellees, holding that (1) the plaintiffs-appellants' claims under the Fifth and Fourteenth Amendments were not ripe for review because the plaintiffs-appellants did not pursue available administrative remedies prior to filing suit in federal court; alternatively, (2) the plaintiffs-appellants were unable to demonstrate a constitutionally protected interest in the duck blind structures; and (3) that the plaintiffs-appellants did not provide sufficient evidence of a causal connection between Gary Arnett's criticism of the TWRA's management of Reelfoot Lake and the removal and destruction of the duck blinds to maintain a First Amendment retaliation claim.

For the reasons set forth below, we REVERSE the district court's dismissal of the plaintiffs-appellants' First Amendment claims and its holdings that the plaintiffs-appellants' Fifth and Fourteenth Amendment claims are not ripe for review and that the plaintiffs-appellants had no constitutionally protected interest in duck blinds. Accordingly, we REMAND to the district court for further proceedings.

### I.    BACKGROUND

Reelfoot Lake was formed in 1810 by an earthquake and the flow of the Mississippi River. "The result of the earthquake was to lower the lands upon which the waters of the lake rest several feet below the surrounding lands. The submergence of the land [by the Mississippi River] carried down the forest timber growing upon it, and these timbers and their remains are still in the lake." *State ex rel. Cates v. West Tennessee Land Co.*, 158 S.W. 746, 747 (Tenn. 1913). The State of Tennessee owns approximately 25,000 acres (15,000 acres of water) in and around the lake. The lake is known for its hunting, fishing, bird population, and as a major wintering area for migrating waterfowl and a winter home to eagles.

In 1913, the Tennessee Supreme Court held that Reelfoot Lake is a navigable stream in the "strict technical legal sense," meaning that private ownership of either its waters or the land underlying them is not permitted. *Id*. at 749. Because it is navigable in the technical sense, "the rights of the public

attach to it, to its use, and to its fisheries, so that it is incapable of private ownership, and the state owns it in trust for all the people, and cannot alienate it away." *Id*. at 752. Nevertheless, the court held that those landowners whose titles include land derived from the 1788 Doherty grants[1] from North Carolina prior to the formation of Reelfoot Lake, land now submerged by the lake, "would be entitled to its [their land's] use and enjoyment as long as they can reasonably identify it and fix its boundaries." *Id*. Title and ownership over a Doherty grant "will carry with it the exclusive right of fishery in the waters over these grants." *Id*.

Acting as owner in trust of Reelfoot Lake, the State of Tennessee has regulated its use. In 1973, the Tennessee General Assembly designated Reelfoot Lake as a "Class I" scenic recreational area under the Natural Areas Preservation Act, Tenn. Code Ann. § 11-14-101. *See* 1973 Tenn. Pub. Acts 185. All land surrounding the waters of Reelfoot Lake was designated a state wildlife management area. *See* Tenn. Code Ann. § 70-5-107(d)(1). And, in 1984, the legislature named the TWRA and the TWRC as the primary agencies to administer activities at Reelfoot Lake. *See* 1984 Tenn. Pub. Acts 548 (codified at Tenn. Code Ann. §§ 11-14-116; 70-1-302(d) and 70-1-305(11)). The legislature also has expressly directed and authorized the Commissioner of the TDEC to establish rules implementing the permitting system over any activities that may impair or obstruct the navigability of watercourses in Tennessee, including Reelfoot Lake. *See*

---

[1] In 1788, the State of North Carolina granted to revolutionary war Colonel George Doherty several tracts of land totaling several thousand acres in an area that was to become Western Tennessee. *See Webster v. Harris*, 69 S.W. 782, 788-89 (Tenn. 1902). Tennessee became a state in 1796, and the 1810 earthquake forming Reelfoot Lake submerged portions of the "Doherty" grants. In 1913, the Supreme Court of Tennessee held that as the Doherty lands were "grantable by North Carolina, and were subject to private ownership before the formation of the lake . . . the mere fact that they have since become submerged by a body of navigable water does not deprive their owners of their title to the land as long as they can be reasonably identified." *State ex rel. Cates v. West Tennessee Land Co.*, 158 S.W. 746, 747 (Tenn. 1913).

their official capacities  seeking prospective equitable relief for continuing violations of federal law, did not apply. *Id*. at 287, 117 S. Ct. at 2042-43. This case is easily distinguished from *Coeur d'Alene* in that the Arnetts' claims simply do not rise to the level of a functional equivalent of a quiet title action implicating special sovereignty interests.

The Arnetts claim to have protected property interests in duck blinds and riparian rights on Reelfoot Lake. Exclusive riparian fishing rights over Doherty land grants submerged under Reelfoot Lake have already been affirmatively established by the Supreme Court of Tennessee. *See State ex rel. Cates v. West Tennessee Land Co.*, 158 S.W. 746, 752 (Tenn. 1913) ("[u]pon all authorities, this title and ownership will carry with it the exclusive right of fishery in the waters over these grants."). The issue for trial in this case implicating the State of Tennessee's regulatory authority is whether the Arnetts have such riparian fishing rights pursuant to a Doherty land grant, but their suit is not in the nature of a quiet title action. The Arnetts do not claim sovereign ownership of Reelfoot Lake or entitlement to the exclusive use and occupancy of the lake, nor do they seek to invalidate the regulatory authority of the Tennessee agencies in this case. If the Tribe in *Coeur d'Alene* had prevailed, Lake Coeur d'Alene would have been annexed to the sovereign control of the Tribe, effectively placing the lake beyond the jurisdiction of the State of Idaho. If the Arnetts prevail at trial, Reelfoot Lake will remain within the sovereign control of the State of Tennessee, and will continue to be subject to Tennessee's regulatory authority. At most, if the Arnetts prevail, the State of Tennessee will be required to respect the Arnetts' riparian fishing rights – something the state is required to do under the jurisprudence of the Supreme Court of Tennessee. The relief sought by the Arnetts in this case does not begin to approach the far-reaching and invasive relief sought by the Tribe under the particular and special circumstances of *Coeur d'Alene*, and this court does not read the ruling of *Coeur d'Alene* to extend to every situation where a state property interest is implicated.

barred by the doctrine of sovereign immunity under the Eleventh Amendment. Specifically, the defendants-appellees argue that the Supreme Court's decision in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 117 S. Ct. 2028 (1997) mandates that this court affirm the district court's grant of summary judgment. In *Coeur d'Alene*, the Supreme Court held that the Coeur d'Alene Indian Tribe's ("Tribe") suit brought against the State of Idaho, various state agencies, and numerous state officials in their official capacities, was barred by the Eleventh Amendment because it amounted to the "functional equivalent of a quiet title action which implicates special sovereignty interests." *Id*. at 281, 117 S. Ct. at 2040. The Tribe, a federally recognized sovereign nation, claimed ownership in the submerged lands and bed of Lake Coeur d'Alene, along with the navigable rivers and streams forming part of its water system, and "sought a declaratory judgment to establish its entitlement to the exclusive use and occupancy and the right to quiet enjoyment of the submerged lands as well as a declaration of the invalidity of all Idaho statutes, ordinances, regulations, customs, or usages which purport to regulate, authorize, use, or affect in any way the submerged lands." *Id*. at 265, 117 S. Ct. at 2032. The tribe also sought "a preliminary and permanent injunction prohibiting defendants from regulating, permitting, or taking any action in violation of the Tribe's rights of exclusive use and occupancy, quiet enjoyment, and other ownership interest in the submerged lands together with an award for costs and attorney's fees and such other relief as the court deemed appropriate." *Id*.

The Court was troubled because the declaratory and injunctive relief sought by the Tribe was "far-reaching and invasive," and characterized the Tribe's claims as the "functional equivalent of quiet title in that substantially all benefits of ownership and control would shift from the State to the Tribe" should the Tribe prevail. *Id*. at 282, 117 S. Ct. at 2040. The Court held that "under these particular and special circumstances," the *Ex Parte Young* exception to Eleventh Amendment sovereign immunity, which generally permits suits in federal court against state officials sued in

1992 Tenn. Pub. Acts 693 § 1 (codified at Tenn. Code Ann. § 69-1-117).

Gary Arnett, his wife Shelly Arnett, and their minor son John Paul Arnett (collectively, "the Arnetts") each claim ownership of a separate duck blind on Reelfoot Lake in Obion County, Tennessee. Gary Arnett alleges ownership of a duck blind located in the Cranetown area of Reelfoot Lake, having claimed it after it was abandoned by its previous owner, and repairing and refurbishing it in September of 1995. Shelly Arnett claims ownership of a duck blind in the Net Raft Timber area of Reelfoot Lake, having claimed and refurbished it in May of 1997. John Paul Arnett claims ownership of a duck blind in the Rushing Pond area of Reelfoot Lake, having received the blind as a gift from his father, Gary Arnett, who obtained title to it, in turn, by conveyance from one Wendell Morris in May of 1997. The Arnetts made or intended to make personal and professional use of the blinds, using them personally to observe and hunt migratory waterfowl, fish, and engage in other family recreational activities, while using them professionally as part of a family guide business for hunters and fishermen.

The Arnetts contend that each of the blinds continually existed in the same location on Reelfoot Lake from before July 1, 1986, until November of 1997. Between November 12 and November 14, 1997, TWRA agents removed a total of nine duck blinds from Reelfoot Lake, including the three blinds allegedly owned by the Arnetts, after determining that the blinds were unregistered, and therefore, unlawful. The TWRA is authorized to remove unregistered duck blinds from Reelfoot Lake under regulations promulgated by the TWRC that provide, in pertinent part:

> [n]o blind may be constructed, or repaired, or any floating blinds moved onto the area that has not met the deadline for registering the blind and displaying the registration number, as prescribed. Unregistered and/or unnumbered blinds are subject to removal at the

discretion of the area manager or a designee of the Tennessee Wildlife Resources Agency . . . .

Tenn. Comp. R. & Regs., ch. 1660-1-2-.02(3)(c)10. After the blinds were removed by the TWRA agents, the TWRA and the TDEC issued letters to the individuals claiming ownership of those blinds stating that those owners wishing to retrieve the structural materials of their blinds should call and make arrangements to pick them up. This was the first notice the Arnetts had of the action taken by the TWRA. The Arnetts allege that of all the blinds removed, only theirs were destroyed.

In March of 1997, approximately eight months prior to the removal and destruction of the blinds to which they claim ownership, the Arnetts sent a letter to Harold Hurst requesting official recognition by the TWRA of the duck blinds in their names, but this request was denied. In the same letter, Gary Arnett asked for permission to engage in commercial aquaculture off of his lake front property. This request was also denied. Subsequently, the Arnetts sent joint applications to the TWRA and TDEC seeking permission to repair the duck blinds. In September, 1997, Robert Baker of the TDEC replied by letter to these requests stating that the Arnetts could repair the blinds without a navigation permit from the TDEC provided that the work conducted was only "in-kind repair, rehabilitation, or replacement" of an existing structure authorized under TDEC rules or that was constructed prior to July 1, 1986. After receiving this response, the Arnetts contend that they spent considerable time and money repairing the blinds throughout September and October of 1997.

In September of 1998, the Arnetts brought this lawsuit pursuant to 42 U.S.C. § 1983 in the Western District of Tennessee seeking injunctive and declaratory relief and attorney's fees. The relief sought by the Arnetts included: 1) a declaratory judgment that they owned the duck blind structures and had the right to rebuild and use those structures without interference; 2) a declaratory judgment declaring the

only if, the alleged owners participate in the TWRA registration process. This alleged customary ownership interest is not disputed by the defendants-appellees, and this court's review of Tennessee law has revealed no authority stating that individuals cannot assert valid ownership interests over abandoned duck blinds on Reelfoot Lake.

The defendants-appellees contend that TDEC rule 1200-4-8-.03(4)(e), when read in conjunction with rule 1200-4-8-.03(5)(c), only exempts from permitting requirements those waterfowl blinds authorized by the TWRC and TWRA. The defendants-appellees have cited no authority interpreting these rules in this fashion, and it is not clear from the rules themselves precisely which kinds of structures "commenced before July 1, 1986" do not need permits under the relevant TDEC rules. In short, a genuine issue of material fact exists as to this issue, and the district court erred when it granted summary judgment citing only to the TWRC's permit requirements.

Ultimately, no clear indicia of Tennessee law exists to guide this court's determination of whether the Arnetts had a constitutionally protected property interest in the duck blinds at issue in this case. Genuine issues for trial exist in this case as to (a) whether the Arnetts have constitutionally protected property interests in the duck blinds to which they claim ownership; (b) if so, what form and nature of procedural process the Arnetts were due before the blinds were removed and destroyed, and whether the defendants complied with these due process requirements; (c) whether the removal and destruction of the duck blinds constituted a "taking" and, if so, the amount of just compensation the Arnetts were due for that taking; and (d) whether the Arnetts have constitutionally protected riparian rights pursuant to a Doherty land grant that have been violated by the defendants-appellees.

### E. Sovereign Immunity.

Finally, the defendants-appellees argue that, although it was not a basis for the district court's grant of summary judgment, the Arnetts' Fifth and Fourteenth amendment claims are

of watercourses in Tennessee. *See* 1986 Tenn. Pub. Acts 818. In 1992, the Tennessee legislature substituted the TDEC as the permitting authority. *See* 1992 Tenn. Pub. Acts 693 § 1 (codified at Tenn. Code Ann. § 69-1-117). The Tennessee legislature expressly authorized and directed the Commissioner of the TDEC to establish rules implementing the permitting system. *See* Tenn. Code Ann. § 69-1-117(b). These rules, which were first promulgated in 1988, include provisions relating specifically to duck blinds on Reelfoot Lake. *See* Tenn. Comp. R. & Regs., ch. 1200-4-8-.03(5). The rules state that "[d]uck blinds authorized by the Tennessee Wildlife Resources Agency [on Reelfoot Lake] pursuant to T.C.A. §§ 70-1-206 and 70-4-107 are authorized by this rule." *Id*. at 1200-4-8-.03(5)(c).

The TDEC rule that the Arnetts rely on to support their argument that they had protected property interests in the duck blinds is rule 1200-4-8-.03(4)(e) which provides that "[a]ny activity or structure which was commenced before July 1, 1986, does not need a permit under this Act." *Id*. The TDEC rules define "structure" as "any building, pier, wharf, dolphin, weir, boom, breakwater, bulkhead, revetment, riprap, jetty, mooring structure, moored floating vessel, piling, aid to navigation, or any other obstacle or obstruction." Tenn. Comp. R. & Regs., ch. 1200-4-8-.02(2)(i). The Arnetts claim that the three duck blinds to which they claim ownership, which may qualify as "other obstacles or obstructions" to navigation under rule 1200-4-8-.02(2)(i), were erected on Reelfoot lake prior to July 1, 1986, and therefore are exempt from permitting requirements under TDEC rule 1200-4-8-.03(4)(e). The Arnetts claim ownership interests in the duck blinds in the Cranetown and Net Raft Timber areas of Reelfoot Lake by having claimed and refurbished them after they were abandoned by their previous owners, and an ownership interest in the blind in the Rushing Pond area of Reelfoot Lake, by having obtained title to it by conveyance from its previous owner. The Arnetts claim that it is customary for individuals to claim private ownership of abandoned duck blinds on Reelfoot Lake, and that these ownership interests are recognized by state officials if, but

TWRA's registration system for duck blinds unconstitutional; 3) a declaratory judgment declaring TWRA's permit program illegal because it deprived them of their riparian rights and allowed non-riparians to use their Doherty lake bed property; 4) a declaratory judgment that they have Doherty riparian rights; and 5) a preliminary injunction protecting their rights to the duck blind sites that they claim. The district court ruled on several motions. First, the district court denied the plaintiffs' motion for a preliminary injunction. And, then, in response to two summary judgment motions, the court granted summary judgment in favor of the defendants-appellees on all claims. The Arnetts appeal the court's summary judgment orders.

## II.    ANALYSIS

### A.    Standard Of Review.

This court reviews a district court's grant of summary judgment de novo. *See Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 774 (6th Cir. 1996). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). The non-moving party may not rely on his pleadings alone, but must demonstrate the existence of a genuine issue for trial by pointing to "specific facts" that create such an issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986). In making this determination, a judge may not make credibility determinations or weigh the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986).

### B.    First Amendment Retaliation.

The Arnetts claim that the removal and destruction of their duck blinds by the TWRA were actions taken in retaliation for Gary Arnett's criticism of the TWRA's management of Reelfoot Lake, in violation of Mr. Arnett's First Amendment

rights. The record reflects that Mr. Arnett had been an outspoken critic of the TWRA's management practices in the year preceding the removal and destruction of the blinds, including several occasions of criticism between August, 1996, and October 28, 1997. For example, Mr. Arnett criticized the TWRA at several informal meetings with TWRA officials, at a town hall meeting in Tiptonville, Lake County, Tennessee, and even testified before the Environment and Conservation Committee of the Tennessee House of Representatives regarding the TWRA's alleged mismanagement of the Reelfoot Lake Wildlife Management Area ("WMA").

To maintain a claim under section 1983 for First Amendment retaliation, a plaintiff must show (1) that he or she engaged in protected conduct; (2) that an adverse action was taken against him or her that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that there is a causal connection between elements one and two, *i.e.*, a plaintiff must show that the adverse action was motivated, at least in part, by his or her protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The district court held that the Arnetts satisfied elements one and two above, but failed to show a causal connection between Gary Arnett's criticism of the TWRA and the removal and destruction of his family's duck blinds.

There is no doubt that the Arnetts satisfied the first element of a retaliation claim. It is well-settled that the freedom to criticize public officials and expose their wrongdoing is a fundamental First Amendment value, indeed, "[c]ritcism of the government is at the very center of the constitutionally protected area of free discussion." *Rosenblatt v. Baer*, 383 U.S. 75, 85, 86 S. Ct. 669, 675-76 (1966). Clearly, criticism of the TWRA's management of Reelfoot Lake and the WMA falls squarely within the ambit of the First Amendment's protections.

There is likewise little room to dispute that the action taken by the TWRA, allegedly in  retaliation for Mr. Arnett's

This court's review of Tennessee jurisprudence has revealed that the Supreme Court of Tennessee evidently has never had occasion to pass judgment on whether private parties have constitutionally protected property interests in unregistered duck blinds on a lake vested in public trust in the State of Tennessee. *See State ex rel. Cates v. West Tennessee Land Co.*, 158 S.W. 746 (Tenn. 1913). In *Hamilton v. Cook*, a Tennessee Court of Appeals stated in a footnote as follows:

> The parties have directed this court's attention to the case of *State ex rel. Cates v. West Tennessee Land Co.*, . . . in which our supreme court discussed the rights of property owners whose lands became submerged when Reelfoot Lake was created by an earthquake in 1810. We note, however, that the Hamiltons' complaint asserts that their boat, duck blind, and decoys were placed in Reelfoot Lake 'a short distance from' their property rather than in the portion of the lake which 'covers' their property. We further note that the Hamiltons *have a property interest in their boat, duck blind, and decoys which is independent of any property rights which they might assert as riparians of Reelfoot Lake.* Accordingly, our resolution of the Hamiltons' section 1983 claim against the individual Defendants does not require this court to resolve the nature or extent of the Hamiltons' asserted riparian rights to Reelfoot Lake.

No. 02A01-9712-CV-00324, 1998 WL 704528, at *8 n.7 (Tenn. Ct. App. 1998)(citation omitted)(emphasis added). The court in *Hamilton* provided no analysis to support its conclusion as to the Hamiltons' property interest in their duck blind, and it was a genuine issue of material fact in that case whether the Hamiltons' blind was registered. *See id*. at *11.

The Arnetts argue that they have a constitutionally protected property interest in the duck blinds under the rules and regulations promulgated by the TDEC. In 1986, the Tennessee legislature enacted a statute granting the Department of Heath and Environment permitting authority over any activities that may impair or obstruct the navigability

the blinds that would entitle them to due process or just compensation for their removal and destruction.

In considering procedural due process claims, this court first determines whether the interest at stake is within the Fourteenth Amendment's protection of liberty and property. *See Ferencz v. Hairston*, 119 F.3d 1244, 1247 (6th Cir. 1997). Only after reaching a conclusion that the interest claimed is within that protection does this court consider the form and nature of the process that is due. *See id*. (citing *Board of Regents v. Roth*, 408 U.S. 564, 570-71, 92 S. Ct. 2701, 2705-06 (1972)). Thus, in a section 1983 due process claim for deprivation of a property interest, a plaintiff first must show a protected property interest, and only after satisfying this first requirement can a plaintiff prevail by showing that "'such interest was abridged without appropriate process.'" *Id*. (quoting *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1108 (6th Cir. 1995)).

Property interests protected by the due process clause must be more than abstract desires or attractions to a benefit. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972). The due process clause protects only those interests to which one has a "legitimate claim of entitlement." *Id*. at 577, 92 S. Ct. at 2709. This has been defined to include "'any significant property interests . . . including statutory entitlements.'" *See Brotherton v. Cleveland*, 923 F.2d 477, 480 (6th Cir. 1991)(citations omitted). Property interests are not created by the Fourteenth Amendment, rather they are created and defined by independent sources, such as state law. *See Brotherton*, 923 F.2d at 480 (quoting *Roth*, 408 U.S. at 577, 92 S. Ct. at 2709). State supreme court decisions are controlling authority for such determinations, but if the state supreme court has not ruled on the precise issue in question, this court must look at other indicia of state law, including state appellate court decisions. *See Brotherton*, 923 F.2d at 480. This court may rely on those other indicia of state law unless there is persuasive data that the state supreme court would decide the issue otherwise. *See id*.

criticism of its management practices, was sufficiently adverse to be cognizable under section 1983. It is not the case that every action, no matter how small, is constitutionally cognizable. *See Thaddeus-X*, 175 F.3d at 396 (citing *Ingraham v. Wright*, 430 U.S. 651, 674, 97 S. Ct. 1401 (1977)("[t]here is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.")). However, the removal and destruction of the Arnetts' duck blinds constitutes more than *de minimis* adverse action, and if it is true that this action was taken in retaliation for Mr. Arnett's criticism of the TWRA, it is enough to chill or deter persons of ordinary firmness from exercising their First Amendment rights in the future. Accordingly, the Arnetts satisfied the second element of a First Amendment retaliation claim.

Although the Arnetts met the first and second elements above, the district court granted summary judgment to the defendants, holding that the Arnetts failed to satisfy the third element of a retaliation claim because they failed to establish a causal connection between Mr. Arnett's protected conduct and the TWRA's adverse action. To demonstrate this causal connection, a plaintiff is required to proffer evidence sufficient to raise the inference that his or her protected activity was a motivating factor for the adverse decision. *See Thaddeus-X*, 175 F.3d at 399. Circumstantial evidence, like the timing of events or the disparate treatment of similar individuals, may support this inference. *See id*. Once a plaintiff has met his or her burden of establishing that his or her protected conduct was a motivating factor behind the adverse conduct, the burden of production shifts to the defendant. *See id*. If the defendant can demonstrate that it would have taken the same action in the absence of the protected activity, it has met its burden and is entitled to summary judgment if it can "show affirmatively that there is no genuine issue in dispute." *Id*.

To defeat a plaintiff's claim of First Amendment retaliation at trial, a defendant is required to show, by a preponderance of the evidence, that it would have taken the same action even in the absence of the protected conduct. *See Cockrel v.*

*Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "To defeat [a] plaintiff's claim on a motion for summary judgment, however, a substantially higher hurdle must be surpassed, particularly where, as is the case here, the moving party bears the ultimate burden of persuasion on this issue at trial." *Id*. (citing 11 James William Moore et al., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)) (if the moving party also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."). To prevail on their motion for summary judgment, the defendants may not simply bring forth enough evidence to allow a jury to find that they would have removed and destroyed the Arnetts' duck blinds regardless of Mr. Arnett's criticism of the TWRA's management of Reelfoot Lake. In reviewing a motion for summary judgment, we must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party, and "[s]ummary judgment in favor of the party with the burden of persuasion ... is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553, 119 S. Ct. 1545 (1999). Thus, if a plaintiff establishes the elements of his or her claim for First Amendment retaliation, summary judgment for the defendant is proper only if the evidence is such that every reasonable juror would conclude that the defendant met its burden of showing that it would have taken the same action even in the absence of the protected conduct. *Cockrel*, 270 F.3d at 1057.

The Arnetts presented circumstantial evidence in support of the requisite causal connection, noting (1) that the duck blinds were removed only after Mr. Arnett criticized the TWRA; (2) that other unregistered blinds were not removed from Reelfoot Lake; and (3) that of the nine blinds removed from the lake between November 12, 1997, and November 14, 1997, only their three blinds were destroyed. This evidence, though not conclusive, is sufficient to raise the inference that

did not rise to the level of a constitutionally protected property interest. The district court noted that in 1986, the TWRC, as the agency directed and authorized to promulgate necessary rules and regulations for activities at Reelfoot Lake, began to regulate the number of permanent waterfowl blinds on Reelfoot Lake. *See* Tenn. Comp. R. & Regs., ch. 1660-1-2-.02(3)(c). Pursuant to this objective, the TWRC promulgated a regulation requiring all waterfowl blind sites to be registered. *See id*. Between 1986 and 1991, permanent waterfowl blinds could be registered only by an original 1986 registrant or his or her alternate. *See id*. During the 1991 registration period, either the registrant or the alternate was required to be declared as the site's permanent registrant, and thereafter, only the permanent registrant was authorized to register the blind site. *See id*. An individual who properly registered his or her waterfowl blind between 1986 and 1991, was allowed to retain the blind as a permanent blind site provided that he or she obtained from the TWRC an annual waterfowl permit, timely registered the blind each year, and complied with other TWRC regulations. *See id*. As previously mentioned, the regulations specifically provide that

> [n]o blind may be constructed, or repaired, or any floating blinds moved onto the area that has not met the deadline for registering the blind and displaying the registration number, as prescribed. Unregistered and/or unnumbered blinds are subject to removal at the discretion of the area manager or a designee of the Tennessee Wildlife Resources Agency. . . .

*Id*. The district court noted that because the Arnetts did not comply with the applicable permit regulations, the duck blinds they claimed to own were not authorized, and were subject to removal by the TWRA. The court held that by virtue of the State of Tennessee's public trust ownership of the Reelfoot Lake bed, and in accordance with the TWRC's interpretation of its own regulations, the removal and destruction of the blinds to which the Arnetts claimed ownership was lawful, and the Arnetts were unable to demonstrate any constitutionally protected property interest in

obtaining just compensation, and if so, whether the Arnetts sought and were denied just compensation for the takings under that provision. The district court was correct when it held that the provisions of Tenn. Code Ann. § 9-8-307(a) provide reasonable, certain, and adequate procedures for obtaining just compensation, and if the alleged takings occurred today or, indeed, at any time after the enaction of this statute, the Arnetts would be required to seek and be denied just compensation under its provisions before their claim under the Just Compensation Clause would be cognizable in federal court. This statute, however, was not enacted by the State of Tennessee until April, 1998, and *Williamson* specifically instructs that the relevant time frame for determining the adequacy of state provisions for obtaining just compensation for an alleged taking is "at the time of the taking." *Williamson*, 473 U.S. at 194, 105 S. Ct. at 3120. *See also*, *Kruse*, 74 F.3d at 697. The Arnetts did not seek just compensation from the state under Tenn. Code Ann. § 9-8-307(a) prior to filing suit, but they were not required to do so under the then prevailing ripeness analysis. The district court erred when it held that the Arnetts' failure to avail themselves of the compensation provisions of this statute rendered their claims under the Fifth and Fourteenth Amendments not yet ripe for judicial review.

This court's review of Tennessee law has revealed no reasonable, certain, and adequate provision for obtaining just compensation that was available to the Arnetts at the time of the alleged takings in this case. Therefore, the Arnetts meet the second prong of the *Williamson* ripeness analysis. The Arnetts' Fifth and Fourteenth Amendment claims were not premature and are ripe for review by the district court.

## D.  Protected Property Interests.

The district court granted summary judgment to the defendants-appellees as to the plaintiffs-appellants' Fifth and Fourteenth Amendment claims for the removal and destruction of the duck blinds on the alternative ground that the plaintiffs-appellants' interests in the duck blind structures

Mr. Arnett's protected activity was the likely reason for the removal and destruction of the Arnetts' duck blinds, and therefore, is enough to trigger the shift of the burden of production to the defendants. The defendants, in support of their contention that they would have taken the same action regardless of Mr. Arnett's criticism, note (1) that Mr. Arnett received an oral warning from TWRA officers in November, 1995, that unless he removed his unregistered duck blind from the Cranestown area, it would be destroyed, predating his criticism of the TWRA approximately by nine months; (2) that Mr. Arnett acknowledged in November, 1997, that he knew that the TWRA had a "policy" of removing and destroying illegal duck blind sites on Reelfoot Lake; (3) that in addition to the Arnetts' blinds, six other unregistered duck blinds were removed from Reelfoot Lake in November, 1997; and (4) that the TWRA removed at least one unregistered duck blind from Reelfoot Lake in 1996.

We are not persuaded that the evidence is such that *every* reasonable juror would conclude that the defendants met their burden of showing that they would have taken the same action in the absence of the protected conduct. Rather, we believe that a genuine issue of material fact exists as to whether there is a causal connection between Mr. Arnett's protected conduct and the TWRA's adverse action. Whether the defendants have met their burden of production by a preponderance of the evidence is to be determined at trial. Accordingly, the district court erred in granting summary judgment to the defendants as to the Arnetts' First Amendment retaliation claim.

## C.  Ripeness.

The district court granted summary judgment to the defendants-appellees as to the plaintiffs-appellants' Fifth and Fourteenth Amendment claims, holding that because the plaintiffs-appellants had not pursued their available state administrative remedies prior to bringing suit, these claims were not ripe. Article III of the Constitution limits the jurisdiction of federal courts to consideration of actual cases

and controversies, and federal courts are not permitted to render advisory opinions. *See Adcock v. Firestone Tire and Rubber Co.*, 822 F.2d 623, 627 (6th Cir.1987). "'Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed.'" *Bigelow v. Michigan Dep't of Natural Res.*, 970 F.2d 154, 157 (6th Cir. 1992)(quoting *Southern Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir.1990)).

The plaintiffs-appellants articulated claims for denial of procedural due process, equal protection, and just compensation for takings under the Fifth and Fourteenth Amendments. In *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S. Ct. 3108 (1985), the Supreme Court declared that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 195, 105 S. Ct. at 3121. If a plaintiff has not pursued available state remedies, the case is not ripe because "the State's action ... is not 'complete' until the State fails to provide adequate compensation for the taking." *Id.* Thus, a plaintiff must demonstrate two things for a regulatory taking claim to be ripe: (1) that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue;" and (2) that if the state had a "reasonable, certain and adequate provision for obtaining [just] compensation . . . at the time of the taking," just compensation was sought and denied through that procedure. *Williamson*, 473 U.S. at 186, 194, 105 S. Ct. at 3116, 3120. Procedural due process and equal protection claims that are ancillary to taking claims are subject to the same *Williamson* ripeness requirements, *i.e.*, procedural due process and equal protection claims ancillary to taking claims are not ripe for review unless the plaintiff has met the two elements above. *See Bigelow*, 970 F.2d at 158-60. The district judge held that the Arnetts failed to pursue administrative remedies available to them under Tenn. Code Ann. §§ 9-8-307(a)(1)(V) and 9-8-

307(a)(2)(A) for physical and regulatory takings, and therefore, their Fifth and Fourteenth Amendment claims were not ripe.

Applying the *Williamson* analysis to this case, this court first must ask whether (1) the removal and destruction of the duck blinds and (2) the denial of alleged riparian rights constituted final agency decisions. "[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury . . . ." *Williamson*, 473 U.S. at 193, 105 S. Ct. at 3120. The removal and destruction of the Arnetts' duck blinds is more properly characterized as a physical taking than as a regulatory taking, and it is clear that the initial decision-maker in this case, the TWRA, arrived at a definitive position inflicting an actual, concrete injury when its agents removed and destroyed the duck blinds. *See Kruse v. Village of Chagrin Falls*, 74 F.3d 694, 697-98 (6th Cir. 1996). The denial of the Arnetts' alleged riparian rights also constitutes final decisions by initial decision-makers, as the combined refusal by TWRA officials to allow the Arnetts to engage in "aquaculture" in the water above their lake bed property, and the issuance of permits by the TWRC authorizing third-parties to hunt and fish above the Arnetts' lake bed property are definitive positions that inflict actual, concrete injuries. Accordingly, the Arnetts meet the first *Williamson* ripeness element.[2]

In applying the second *Williamson* ripeness element, this court must ask whether there existed in Tennessee at the time of the taking a reasonable, certain, and adequate provision for

---

[2]The defendants-appellees have argued that the Arnetts did not receive final agency decisions because they did not seek declaratory orders from the relevant agencies pursuant to the Uniform Administrative Procedures Act ("UAPA"), Tenn. Code Ann. § 4-5-223 before filing suit. A plaintiff must exhaust his administrative remedies under the UAPA as a jurisdictional prerequisite to obtaining declaratory relief in state court. *See Hamilton v. Cook*, No. 02A01-9712-CV-00324, 1998 WL 704528, at *7 n.6 (Tenn. Ct. App. 1998). The Arnetts were not required to exhaust these administrative remedies for their claims to be ripe in federal court.