**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0374n.06

**No. 10-1766**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Apr 06, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| GARY STEVENS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| THETFORD TOWNSHIP; EILEEN KERR; JOHN | ) | |
| CONGDON; CLYDE HOWD; JULIE PAULSON; | ) | |
| SHELLY AYOTTE; JAKE BARTON, | ) | |
| | ) | |
| Defendants-Appellees, | ) | |
| | ) | |
| LUTHER HATCHETT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

BEFORE: GILMAN, ROGERS, and STRANCH, Circuit Judges.

ROGERS, Circuit Judge. This case involves a dispute over the sale of a small parcel of land in Thetford Township, Michigan, which the Thetford Township Board of Trustees voted to sell through a bidding process to adjacent landowners for $900 instead of to Gary Stevens for $2,008.57. Stevens contends that members of the Board voted against him as retaliation for his past criticism of the Board and its individual members, and he appeals from the district court's grant of summary judgment to Thetford Township and the individual Board members. However, the evidence Stevens presents fails to support the inference that a majority of the Board members acted with a retaliatory

-1-

motive. Since a majority vote is necessary to effect the sale, Stevens cannot make the required

showing that retaliation was a motivating factor for the sale of the land to the other bidder.

I.

Gary Stevens, a resident of Thetford Township, was by his own description a "known, vocal

critic" of the Thetford Township Board of Trustees (the Board). He attended Board meetings

regularly and often spoke out at them against policies adopted by the Board, and also wrote letters

to the editor of the local newspaper criticizing Board members. In 2008, Stevens decided to run for

Clerk of Thetford Township, a position that would have placed him on the Board, but in August he

lost in the primary to incumbent Board member Julie Paulson. Cindy Hicks, an incumbent Board

member who aligned herself with Stevens, also lost. Stevens's failed candidacy did not quell his

criticisms; he continued to attend Board meetings and voice his opinions.

At the September 8, 2008 Board meeting, the pre-election Board was still in office. The

Board considered selling a triangular parcel of land located close to the northwest corner of Vienna

and Center Roads in downtown Thetford Township. The parcel is small and not subject to

development, sandwiched in the middle of several other plots. A strip of land called a "clearview"

borders the parcel on two sides and occupies the space between the subject parcel and the streets.

Because of the clearview, no portion of the parcel directly abuts a roadway. The clearview, owned

by the State of Michigan, is designated to remain undeveloped so as to provide clear sight lines for

drivers approaching the town's central intersection.

The third side of the parcel is bordered by land owned by James and Kate Gerzetich, where the Gerzetiches have a hair salon. In September 2006, the Gerzetiches had approached the Board with a request to purchase the subject parcel so that they could clean up the brush and debris that had accumulated on it. The Board declined the Gerzetiches' request at that time, instead voting to lease the property to them for $1.00 per year. The Gerzetiches began cleaning and maintaining the parcel.

In September 2008, the Gerzetiches again approached the Board about purchasing the property, citing their interest in doing further clean-up work. The Board discussed this request at its meetings on September 8 and 22, both of which Stevens attended and spoke at. The record does not indicate which comments in the meeting minutes are attributable to Stevens. At the second meeting, the Board voted to sell the property and accept bids for its purchase, which the Board advertised in a local newspaper on the advice of the Township's attorney. The Board also received a valuation of the subject property from the township assessor in the amount of $900.

At the next meeting, held on October 27, 2008, the Board reviewed the two sealed bids it had received for the property. The Gerzetiches had submitted a bid of $900, and Stevens had submitted a bid of $2,008.57. Board member Eileen Kerr then moved to sell the subject parcel to the Gerzetiches. She testified in her deposition that such a motion was the procedural mechanism through which a Board member presents an issue first for discussion and then for a vote by the Board.

Board member John Congdon expressed concern with the future owner's access to the landlocked plot and asked Stevens if he had property abutting the subject parcel. Stevens stated that

he did not. Congdon then asked Stevens how he planned to access the parcel, and Stevens said that he would access it from Vienna Road. Congdon stated that he was not comfortable proceeding with the vote until the Board knew whether an individual would have access to the parcel across the clearview. The Board agreed to investigate the access issue, and Kerr withdrew her motion.

After the meeting, Kerr was allegedly overheard telling fellow Board member Shelly Ayotte that "there was no way that Gary Stevens would ever get the subject property." Kerr's justification for this statement, offered at her deposition, was that she believed that the Board would not sell the parcel to anyone who did not have access.

After the meeting, township assessor Jill Edson emailed Steve Gasser, a representative from the Michigan Department of Transportation (MDOT), with the following question:

> The Board of Trustees has asked me to inquire as to whether a parcel which is owned by the township, located at the corner of Vienna and Center Roads has access through the clear-view area.
>
> If you could give me whatever information you have with regards to this issue, I would greatly appreciate it.

Gasser responded in relevant part:

> MDOT owns a clear vision corner at all 4 quadrants of M-57 and Center Road. MDOT does not allow access through these corners since they were purchased for the purpose of sight vision safety.

During his deposition, Gasser acknowledged that he was considering only vehicular access when he responded to the inquiry, and he believed that pedestrians could walk across the clearview, but the only information the Board received was this email response.

Before the next meeting, the newly elected members of the Board assumed the positions vacated by their outgoing predecessors. The new Board was comprised of four incumbent members — Ayotte, Congdon, Kerr, and Julie Paulson — and three new members — Jake Barton, Clyde Howd, and S. Piechnik.

The next Board meeting took place on November 24, 2008. Stevens attended this meeting, but the record does not indicate whether he spoke. Howd noted the email from Gasser and moved to sell the subject parcel to the Gerzetiches, and Kerr seconded the motion. The Board discussed the proposal, and new Board member Piechnik questioned whether the owner of another adjoining parcel was aware of the bidding process. Only Piechnik voted against Howd's motion; the remaining six Board members voted to sell the property to the Gerzetiches.

Each of these six Board members has provided an affidavit in which the member asserts that his or her vote was based primarily on the accessibility issue — relying on the email from Gasser as a blanket prohibition on access — and denies that the member was motivated by Stevens's criticisms. Stevens points out, however, that anyone can access the parcel by walking across the clearview, a fact that some of the Board members admitted to silently wondering about but which none questioned aloud.

In February 2009, Stevens filed a complaint in federal court against Thetford Township and all members of the Board other than Piechnik. Around this time, a local newspaper ran a story covering Stevens's lawsuit. The story included the following quote from Kerr:

> The reason I preferred (Gerzetich's) bid was because I didn't understand why anyone would want a small piece of landlocked property. . . .

> In the end, I thought it would create more conflict. I had people contact me telling me that he was going to torture the Gerzetich's [sic] every time they wanted to use their front door. I didn't see the purpose and I still don't.
> I didn't mean to embarrass Mr. Stevens. And I don't think that anyone has violated his right to free speech.

Stevens asserts that Kerr actually made this comment prior to the vote and the lawsuit, but he provides no support for this allegation.

After completing discovery, the defendants filed a motion for summary judgment. The district court granted the motion, finding that Stevens "ha[d] not presented evidence indicating that his bid was not accepted out of a motivation to retaliate against him for exercising his constitutional rights" and therefore had not created a genuine issue of material fact to withstand summary judgment. Stevens has timely appealed that decision.

II.

Stevens's appeal fails because he cannot make the requisite showing of a causal connection between the allegedly adverse action of the Board and his protected conduct. No one disputes that Stevens's criticism of the Township Board is protected conduct, which is the first necessary showing for a retaliation claim. *See Paige v. Coyner*, 614 F.3d 273, 280-81 (6th Cir. 2010), where we held that voicing an opinion at a public hearing about a proposed public works project is protected conduct. Nor does anyone dispute that the Board's decision to sell the property to a lower bidder could be considered an adverse action against Stevens, one "that would likely chill a person of ordinary firmness from continuing to engage in [the protected] activity," the second required showing, *see id.* at 277. However, to demonstrate a causal connection between the protected conduct

and the Board's action, Stevens must "proffer evidence sufficient to raise the inference that his . . . protected activity was a motivating factor for the adverse decision." *See Arnett v. Myers*, 281 F.3d 552, 560 (6th Cir. 2002). This he has failed to do.

Stevens has failed to make the requisite showing that his criticisms of the Board were a motivating factor for a majority of the Board's members, and only a majority would be able to effect the adverse action of selling the property to the other bidders. This circuit has explained that a motivating factor "is one without which the action being challenged simply would not have been taken." *Holzemer v. City of Memphis*, 621 F.3d 512, 525 (6th Cir. 2010) (citation and internal quotation marks omitted). An argument of motivation "must point to specific, nonconclusory allegations reasonably linking [plaintiff's] speech to [the adverse action]." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010) (citation and internal quotation marks omitted). Stevens has not created a genuine issue of material fact with respect to enough of the Board members to show that but for a retaliatory motive, he would have been sold the property at issue.

Stevens's case is weakest against the two incoming Board members named in his suit, Barton and Howd. These individuals were not Board members at the time of Stevens's confirmed most recent critical comments, and those comments were not aimed at them. Although Stevens has supplied affidavits in which Barton and Howd admit to being aware of his irksome nature, he has presented no evidence that either Barton or Howd was affected by any of his comments. The record does not suggest that either of these two members was aligned with the incumbent defendants in the election; indeed, Barton ran on Stevens's slate during the primaries. The only other fact offered

against the new Board members that could suggest a retaliatory motive on their part is that they accepted such a significantly lower bid on the property, which was arguably against the Township's interests. These facts do not imply a retaliatory motive for their votes. Stevens has failed to present sufficient evidence of a causal connection between his criticisms and the decision of these two Board members to vote in favor of selling the parcel to the Gerzetiches.

Stevens's case also fails against Congdon, the incumbent Board member who first raised the issue of accessibility for the parcel because of the clearview. The only additional evidence offered against Congdon is that he was present for and the object of some of Stevens's criticisms. This is not enough; the mere temporal proximity of Stevens's criticisms to Congdon's vote cannot support the inference of a retaliatory motive in this case. The bare fact that an adverse action occurs after the plaintiff's protected conduct is generally not sufficient in itself to support an inference that the defendants acted with a retaliatory motive without additional evidence of causation. *See Farmer v. Cleveland Public Power*, 295 F.3d 593, 602 (6th Cir. 2002). Given the objective reasons for selling the land to the Gerzetiches — including their past maintenance of the property and their ready access to it — temporal proximity alone is not significant enough here to create an inference of retaliatory motive.

This is not a case like *Arnett v. Myers*, 281 F.3d 552, where Tennessee Wildlife Resources Agency agents removed and destroyed the Arnetts' duck blinds shortly after Gary Arnett's criticism of the Agency's management of a lake. There, many unregistered blinds existed at the lake, but only the Arnetts' blinds were destroyed. The agents' actions were more targeted and more retributive than

those in this case. Here, Congdon simply declined to accept Stevens's bid. Stevens also offers facts that are less convincing than those in *Paige v. Coyner*, 614 F.3d 273. There, Paige criticized a proposed interstate project at a public hearing conducted by the port-authority executive director. The director took it upon herself a week later to call Paige's employer, to whom she gave false reports on what Paige had said at the meeting, which allegedly resulted in Paige's dismissal. This court concluded that Paige had alleged sufficient facts to withstand summary judgment, including evidence that the official had exhibited a "visibly negative reaction" to Paige's comments and made allegedly false statements to her employer. *Id.* at 282-83. Here, there is no evidence of a negative reaction on Congdon's part to Stevens's criticisms, and his actions are far less nefarious. The cases do not support the inference that Congdon had a retaliatory motive when he voted against Stevens.

Even if the evidence Stevens presents against Congdon were enough to create an inference that his vote was motivated in part by Stevens's criticisms, Congdon has met his burden under *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 218-19 (6th Cir. 2011), of "demonstrat[ing] that he would have taken the same action in the absence of the protected activity" (internal citations, quotation marks, and brackets omitted). This burden is a high one; the evidence must be "such that every reasonable juror would conclude that the defendant met its burden of showing that it would have taken the same action even in the absence of the protected conduct." *Arnett*, 281 F.3d at 561 (citation omitted). Congdon has satisfied his burden.

Congdon has significant evidence supporting his assertion. He was the one who first brought up the issue of access to the property, a move that delayed the actual vote on the property from

occurring until after the new Board was seated. Gasser's email informed the Board that access across the clearview was not allowed, which was precisely the concern Congdon had raised. The lower bid accepted by the Board equaled the assessment value of the property. The Gerzetiches had cared well for the property during their lease, had in fact suggested the sale in the first place, and had a continuing interest in its upkeep. The property had no discernible use. Although "[a] defendant's motivation for taking action against the plaintiff is usually a matter best suited for the jury," *Paige*, 614 F.3d at 282, where, as here, every reasonable juror would find that Congdon would have voted the same even absent Stevens's criticisms, summary judgment must stand.

We need not consider the remaining Board members. Stevens has not presented enough facts for a preliminary showing of retaliatory motive for at least four of the Board members, and so his appeal must be dismissed. If retaliation served as the motivating factor for less than a majority of the seven-member Board, the ultimate decision would not change and so retaliation could not serve as the but-for cause of the Board's decision as a whole.

### III.

The evidentiary issue that Stevens raises in a footnote is easily resolved. Stevens argues that the defendants improperly supported their motion for summary judgment with affidavits replicating their deposition testimony in lieu of filing the actual depositions. We find no issue with these actions. The affidavits were made on personal knowledge, set out facts that would be admissible in evidence, and showed that the affiants were competent to testify on the matters stated. They satisfied all the requirements for affidavits used to support a motion for summary judgment under Fed. R. Civ.

P. 56(c)(4).  Nothing in Fed. R. Civ. P. 56(c)(1)(A) suggests that one type of support, such as a

deposition, is preferable to another, such as an affidavit.  Stevens does not appear to challenge the

affidavits on any of the grounds listed in Rule 56(c)(4), but simply because they were duplicative.

He argues that the depositions should have been used instead.  Since Stevens subsequently ordered

the deposition transcripts, both parties have now had the opportunity to submit the portions they

deemed relevant to support their respective positions, and so we have had the opportunity to consider

both.  Our judgment remains unchanged.

IV.

We affirm the judgment of the district court.

**Ronald Lee Gilman, concurring.** Although I concur in the decision reached by the lead opinion, I do so reluctantly. My concerns are as follows:

First, retaliation for Stevens's criticisms of the Board need only be "*a* motivating factor for the adverse decision." *Arnett v. Myers*, 281 F.3d 552, 560 (6th Cir. 2002) (emphasis added). The fact that the Board may also have been motivated by reasons other than retaliation does little to demonstrate that they "would have taken the same action in the absence of the protected activity" or to absolve them of liability for their decision. *See Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 218-19 (6th Cir. 2011) (internal quotation marks omitted). I believe that a reasonable juror might conclude that, despite the justifications advanced by the lead opinion, retaliation served as a motivating factor for several of the Board members.

Second, I remain troubled by the fact that the vote of the Board's majority appears to go against the best interests of the Township by choosing to accept less money for the land in question without a good reason in the record for doing so. When faced with a decision to take more money versus less money for the same parcel of Township land, one would think that the Board would choose the higher bid without regard to the personal characteristics of the different bidders.

If the disparity between the two bids had been much larger—say, for example, $10,000—I believe that this court could more readily draw an inference of retaliatory motive solely from the Board's action. But the roughly $1,100 difference between the two bids is surely no more than a tiny fraction of the Township's total annual budget. Any inference that could be drawn from this small difference is undermined by the fact that two of the new Board members voted for the lesser bid.

That they voted against the apparent best interests of the Township is puzzling, particularly considering that they had never been subject to Stevens's criticisms. Nevertheless, their decisions suggest that reasons other than retaliation motivated the votes of at least some of the Board members.

Despite the above concerns, I concur with the lead opinion's conclusion that Stevens has not presented sufficient evidence to support a finding that either of the two new Board members, Jake Barton and Clyde Howd, acted with a retaliatory motive. On the other hand, I find the case against John Congdon at least plausible. Congdon, an incumbent member of the Board, was present for many of Stevens's critical remarks at Board meetings and also ran against Stevens on Kerr's and Paulson's electoral ticket. The case against him is bolstered by the temporal proximity between Stevens's criticism and the Board's action. *See Arnett*, 281 F.3d at 560-61 (asserting that temporal proximity may serve as circumstantial evidence of a defendant's retaliatory intent). And the evidence in the record gives rise to a reasonable inference that Board members Eileen Kerr and Julie Paulson may have been motivated by retaliation.

But one more Board member was still required to have acted with a retaliatory motivation in order for Stevens's case to survive summary judgment, and this is where I believe that his case fails. Stevens's claim against Shelly Ayotte is limited to the fact that she was an incumbent Board member who voted against his bid for the land in question. As a result, I find nothing more than a scintilla of evidence to support Stevens's claim against her. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the

plaintiff."). If the record included even a bit more evidence of a retaliatory motive on Ayotte's part, I would be inclined to reverse and remand this case for a jury determination.

Divining a party's motivation is generally reserved for the jury, and the defendants must meet a very high burden of demonstrating that no reasonable juror would find in Stevens's favor. *See Arnett*, 281 F.3d at 561. But without more evidence of a retaliatory motive against Ayotte, I find myself in agreement with the lead opinion. I therefore concur.