**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0682n.06
Filed: September 8, 2006

No. 05-4107

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CITY OF PARMA, OHIO, on behalf of itself and all others similarly situated, | ) ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | C O U R T   F O R   T H E |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| CINGULAR WIRELESS, LLC, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

_____

BEFORE: GILMAN and GRIFFIN, Circuit Judges, and DUGGAN, District Judge.[*]

GRIFFIN, Circuit Judge.

Defendant-appellant Cingular Wireless, LLC ("Cingular"), which maintains a national wireless communications network, entered into a licensing agreement with plaintiff-appellee City of Parma, Ohio ("Parma"), pursuant to which Cingular was authorized to construct and operate a tower cell site on Parma's property. The agreement provides that Cingular will pay rent and license fees to Parma for a five-year renewable term.

The instant case arises from Cingular's alleged attempts to reduce its license costs, following a merger with AT & T Wireless Services, Inc. ("AWS"), by forcing Parma, and others similarly

_____

[*]The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

situated, to amend their existing agreements with Cingular on threat of termination. Parma initiated this putative class action lawsuit, setting forth claims for anticipatory breach of contract and declaratory judgment. Plaintiff filed a motion for class certification. Cingular filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The district court thereafter attempted to broker a settlement via three off-the-record telephone conference calls, resulting in three corresponding orders purportedly resolving the case by agreement of the parties. Pursuant to the orders, Cingular agreed to certain terms, including sending "corrective letters" to Parma and the putative class, stating that Cingular has no intention of terminating its current licensing agreements prior to expiration, other than in accordance with existing terms and conditions. In light of this presumed resolution as expressed in the orders, the district court dismissed the case without prejudice and denied, in pertinent part, Cingular's pending motion for judgment on the pleadings as moot. Both parties, however, have expressed dissatisfaction with the purported settlement and thus have sought to alter or amend the dismissal orders.

Cingular now appeals, claiming that the district court erred in denying its motion for judgment on the pleadings as moot. For the reasons set forth below, we reverse the finding of mootness by the district court and remand for a hearing on the merits of Cingular's motion for judgment on the pleadings.

I.

On July 30, 1997, AWS entered into a license agreement (the "Agreement") with Parma, pursuant to which AWS, or its successor, agreed to pay Parma a fee in exchange for authorization

to construct and operate a cellular tower site on Parma's property. In accordance with the

Agreement's terms, Cingular, which acquired AWS in 2004, currently makes monthly payments

(consisting of license fees and rent) to Parma in the amount of $4,414.93. The Agreement has an

initial term of five years, but automatically renews for additional five-year terms:

> Upon execution of this Agreement, Licensor grants to Licensee a "License" of the Premises to Licensee for a term of Five (5) years, with a "Commencement Date" of the date Notice is given and terminating at midnight on the last day of the month in which the fifth (5th) anniversary of the Commencement Date occurs. This License shall automatically renew on the same terms, for five (5) successive "Additional Terms" of five (5) years each, *unless Licensee gives Licensor written notice during the initial term or any Additional Terms stating Licensee will terminate the License at the end of the initial term or Additional Term then in effect.*

Emphasis added.[1]

Thus, Cingular has the right to terminate the Agreement at the end of the present term by

giving Parma written notice of its intent to terminate prior to the end of the term. The Agreement

is currently in its second term, having first expired and automatically renewed on July 31, 2002. The

present term ends on July 31, 2007.

As a result of the merger, the combined Cingular and AWS network contains areas of

overlapping cellular coverage. In an apparent effort to make its acquisition of AWS profitable,

---

[1]Other than the notice provisions providing for cancellation of the Agreement upon the expiration of any of the five-year terms, the Agreement permits premature termination only if Cingular loses any necessary governmental approval, or if the cell site, in Cingular's "good faith judgment, [is] or become[s] unacceptable or unusable under [Cingular's] then-current design or engineering specifications . . . ." Parma alleges that these circumstances are not applicable to the present dispute.

Cingular sought to reduce the combined capital costs of the new entity by between $600 million and $900 million in 2005. As a key component of its cost-cutting plan, Cingular implemented a campaign to reduce its license fees by negotiating amendments to its license agreements for cell sites in overlapping coverage areas. In conjunction with this effort, Cingular entered into a discussion with Parma to amend the Agreement. On March 10, 2005, Cingular's representative, Kib Pearson, discussed with Parma's Service Director, Brian Higgins, Cingular's desire to amend the terms and conditions of the Agreement. Later that day, Pearson faxed to Higgins a letter with an attached "term sheet" and "sample amendment." The letter stated in pertinent part:

> As part of the effort to merge the two national networks into one, thousands of cellular antenna sites will be eliminated in areas where there is overlapping coverage between the two companies. Cingular is currently evaluating both its existing and newly acquired sites to determine which are no longer needed as part of the new combined network.

> Your site is part of an overlapping coverage area. Cingular plans to terminate approximately half of the sites in your market based on a number of variables, including proximity to other sites as well as the cost of operating the site (e.g. rent, utilities) both now and in the future.

> The decision on which sites will be terminated is underway. In order for your site to be considered for inclusion in the new combined network, significant changes need to be made to the existing contract. Cingular intends that the current lease agreement between you and Cingular be amended to include the following terms and conditions attached herewith.

> Fortunately, the attached terms will allow your site to strengthen its position to those who are making the final decision.

> This effort is urgent. Please review the terms and contact me with any questions you may have.

The term sheet accompanying the above letter provided for a fifty percent rent reduction, from $4,414.93 to $2,250.00 per month. Other proposed changes to the Agreement included decreasing the rate at which the license fee increases per term from roughly fifteen percent to three percent, and adding a "rent abatement period" and a "rent guarantee period."[2]

Interpreting the letter as a threat to terminate the Agreement if Parma refused to renegotiate, Parma challenged what it perceived as Cingular's "strong-arm tactic" by filing a two-count class action complaint on April 18, 2005, in the Court of Common Pleas, Cuyahoga County, Ohio, in which it asserted anticipatory breach of contract and sought a declaratory judgment that the Agreement did not permit termination for "overlapping coverage" or economic convenience. Parma moved for class certification contemporaneously with the filing of its complaint, seeking certification of a nationwide class consisting of Cingular's landlords who received letters substantially similar to the letter sent to Parma. Parma alleges that the letter is part of an aggressive campaign on the part of Cingular to reduce its payments on over 15,000 lease and license agreements for cellular antenna sites by threatening to terminate for overlapping coverage unless its landlords agree to fifty percent rent reductions. Parma filed an amended class action complaint in the state court on April 21, 2005.

On May 24, 2005, Cingular removed the case to federal district court on the basis of diversity jurisdiction, 28 U.S.C. §§ 1332(a)(1) and (d)(2)(A), and pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005). Cingular filed an answer, responded to Parma's

---

[2]After sending the March 10 letter, Cingular continued to make the requisite rent payments to Parma, including payments on March 29 and April 28, 2005. Parma has negotiated and cashed all of Cingular's payments under the Agreement.

motion for class certification under federal law, and filed a motion for judgment on the pleadings

pursuant to Federal Rule of Civil Procedure 12(c).[3]

On July 13, 2005, the district court conducted an off-the-record telephone conference with

counsel for both parties, which culminated, on July 19, 2005, in the court's issuance of an order

entitled "Stipulated Dismissal Without Prejudice." The order dismissed the case without prejudice

in light of the parties' apparent agreement, during the July 13 telephone conference, to the following

terms enumerated in the order:

> 1.      Cingular shall send a letter to Parma and all cell site lessors and licensors
> informing them that Cingular has no intention of terminating its lease or licensing
> agreement prior to its expiration, other than in accordance with any lease or license
> provision.
>
> 2.      Cingular shall send a letter to all cell site lessors and licensors with whom
> they renegotiated their lease or license after January 1, 2005, informing them that if
> they wish to reinstate their prior lease or license agreements, they may do so by
> contacting a Cingular agent, to be identified in the letter.
>
> 3.      Cingular shall copy the Court with the two form letters.

---

[3]In its Rule 12(c) motion, Cingular argued that it is entitled to judgment on the pleadings because Parma's amended complaint does not adequately set forth a claim of anticipatory repudiation of the Agreement under Ohio law. Specifically, Cingular argued that Parma's amended complaint does not allege that the March 10 letter unequivocally states: (1) that Cingular refused to perform its obligations under the Agreement unless Parma accepted Cingular's proposed amendments; (2) that Cingular was terminating the Agreement; or (3) that Cingular had any intention to terminate the Agreement prior to the end of the current term. In addition, Cingular maintained that, even if the amended complaint sufficiently alleges a claim for anticipatory repudiation, Cingular's subsequent performance of the Agreement, i.e., uninterrupted rental payments even after sending the letter and initiation of the lawsuit, and Parma's acceptance of Cingular's performance, nullifies any conceivable repudiation. Cingular also argued that it is entitled to judgment on the pleadings with regard to Parma's declaratory judgment claim because no controversy exists.

4.      Cingular shall submit to the Court for *in camera* review the name and location of all lessors and licensors to whom they mailed these form letters.

5.      Cingular shall send a letter to Parma informing Parma of the number of letters Cingular mailed to its lessors and licensors.

6.      Based on Cingular's agreement to perform one through five above, Parma agreed to a dismissal of this case without prejudice.

Given the apparent resolution of the case pursuant to the above terms, the district court, in the July 19 Order, dismissed the case without prejudice for lack of a case or controversy and thus denied as moot both parties' pending motions.

Thereafter, on July 25, 2005, Parma received a corrective letter from Cingular dated July 14, 2005, which advised Parma that "while Cingular Wireless LLC does not believe that any of its prior communications have indicated otherwise, Cingular will not terminate the Leases in any manner inconsistent with the terms of the Leases."

Neither party was satisfied with the terms of the July 19 Order.  On July 25, 2005, Parma filed a motion to amend the judgment pursuant to Federal Rule of Civil Procedure Rule 59(e). Parma moved the district court to:  (1) remove from the July 19 Order all statements indicating that Parma or its counsel agreed or stipulated to the order or its component parts, (2) direct Cingular to send Parma copies of each form letter sent pursuant to the July 19 Order, (3) reference attorney fees in the order, and (4) expand the class of recipients of the corrective letters to include landlords who had renegotiated their leases prior to January 1, 2005.  Additionally, Parma argued that Cingular's July 14 letter was not in accordance with the July 19 Order and that the class action should not be dismissed simply because Parma's claim was mooted.

Cingular responded to Parma's Rule 59(e) motion and filed its own motion to alter the stipulated dismissal without prejudice or, in the alternative, to reconsider Cingular's motion for judgment on the pleadings. Cingular argued that the scope of the corrective letter recipients identified in the July 19 Order was significantly broader than was discussed during the July 13 telephone conference.

In light of the parties' respective motions to correct the court's July 19 Order, the district court, on August 4, 2005, held another off-the-record telephone conference. The next day, the court issued a nunc pro tunc order that modified the description of the recipients of the corrective letters to include only landlords who had received a letter similar to the March 10 letter. The order also omitted references to any agreement or stipulation by Parma to the dismissal. The order acknowledged the court's receipt of Cingular's proposed corrective letters and directed Parma to submit proposed corrective letters to the court no later than August 15, 2005; the court would then draft proposed corrective letters to be discussed by the court and the parties at a subsequent conference call to be held on August 16, 2005. The order also directed Cingular to submit to the court "all versions of the March 10, 2005 letter received by Parma, which Cingular sent to other cell site lessors and licensors." The nunc pro tunc order expressly superseded the court's July 19 Order, provided for dismissal of the case without prejudice, and denied as moot Cingular's motion for judgment on the pleadings and Parma's motion for class certification. Cingular's subsequent motion to alter the nunc pro tunc order was denied on August 10, 2005.

On August 16, 2005, the district court held another off-the-record telephone conference with the parties to discuss the various proposals for the form letters. This conference generated another order (the "August 16 Order"), which set September 7, 2005, as the deadline for Cingular to send the corrective letters. The order further instructed Cingular to report the names and addresses of recipients of the corrective letters to the court, to submit a report of all licensors who requested reinstatement of their prior leases, and to report to Parma the actual number of corrective letters sent to these licensors. The district court retained jurisdiction to enforce the August 16 Order and the nunc pro tunc order.

On August 18, 2005, Parma filed a notice of appeal. In its appeal, Parma objected to various aspects of the district court's orders, including the fact that the corrective letters directed by the district court did not refer to the litigation and permitted Cingular's reports or submissions to be made *ex parte* or *in camera*. Cingular responded by filing in the district court a motion for stay of the court's orders pending appeal and a notice of cross appeal in this court. On September 1, 2005, the district court denied Cingular's motion for a stay, and Cingular immediately filed in this court an emergency motion for a stay pending appeal in light of the rapidly approaching September 7, 2005, deadline to send the corrective letters required by the district court's orders, which both sides were appealing. On September 7, 2005, a panel of this court granted Cingular's request for a stay.

On September 22, 2005, Parma filed a motion to voluntarily dismiss its appeal pursuant to Federal Rule of Civil Procedure 42(b). On September 22, 2005, this court granted Parma's motion to dismiss, leaving only Cingular's appeal pending.

II.

On appeal, Cingular contends that the district court erred in denying its motion for judgment on the pleadings. Cingular urges this court to address the merits of the motion and maintains, in this regard, that Parma's amended complaint neither supports a claim for anticipatory breach of contract nor alleges a substantial controversy to support a claim for a declaratory judgment, in the absence of an allegation that a breach of contract was imminent or even likely. In the alternative, Cingular argues that this court should vacate the district court's orders because, despite the fact that a class was never certified, the orders improperly require Cingular to send letters to putative class members and allow them to renegotiate the terms of their leases. Cingular argues that the district court, in effect, improperly ordered permanent, mandatory class-wide "injunctive" relief that was never sought in Parma's amended complaint. Finally, Cingular further maintains that, if this case is remanded, the case should be re-assigned to a different judge.

Cingular's argument that the district court improperly denied its motion for judgment on the pleadings raises the issue of mootness. Following each of the telephone conferences, the district court issued orders which it believed represented the terms by which counsel agreed to dismissal of the case without prejudice. Consequently, the district court held that there was no case or controversy to be adjudicated, dismissed the case, and dismissed Cingular's motion for judgment on the pleadings as moot, without ever ruling substantively on it.

We review de novo a district court's decision pertaining to mootness. *Ammex, Inc. v. Cox*, 351 F.3d 697, 704 (6th Cir. 2003). As a general rule,

> [a] federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue. *Church of Scientology v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992). A case becomes moot "'when the issues presented are no longer 'live' or parties lack a legally cognizable interest in the outcome.'" *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 491 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). In other words, a case becomes moot only when subsequent events make it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* The heavy burden of demonstrating mootness rests on the party claiming mootness. *Id.*

*Cleveland Branch*, *N.A.A.C.P. v. City of Parma, Ohio*, 263 F.3d 513, 530-31 (6th Cir. 2001).

"'Settlement of a plaintiff's claims moots an action.'" *Brunet v. City of Columbus*, 1 F.3d 390, 399 (6th Cir. 1993) (quoting *Lusardi v. Xerox Corp*., 975 F.2d 964, 974 (3d Cir. 1992)). "'[T]he settlement of an individual claim typically moots any issues associated with it[.]'" *Southern Ohio Coal Co. v. Donovan*, 774 F.2d 693, 699 (6th Cir. 1985), *amended* 781 F.2d 57 (6th Cir. 1986) (quoting *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 400, 97 S.Ct. 2464, 2472, 53 L.Ed.2d 423 (1977) (Powell, J., dissenting)). However, "'[t]he general rule is now well settled: the case is not moot unless the parties intended to settle, or unless it is not possible to take any effective action to undo the results of compliance.'" *Id.* (quoting Wright, Miller, and Cooper, Federal Practice and Procedure § 3533.2 (1984)).

In the instant case, despite the district court's diligent attempt to broker an expedient resolution to this case, it is readily apparent from the record that, from a practical standpoint, this laudable goal has not been achieved. In fact, the parties have agreed on little since the inception of this lawsuit. After each off-the-record telephone conference, both parties expressed dissatisfaction

with the resultant dismissal orders and immediately challenged various substantive aspects of those orders. In sum, the dismissal orders have spawned nothing but discontent. Cingular, in its protestations, has consistently reiterated its argument to the district court that it should consider the merits of its motion for judgment on the pleadings.

The parties' persistent challenges to the dismissal orders, in addition to the fact that the district court explicitly retained jurisdiction to enforce the July 19, August 5, and August 16, 2005, orders, lead us to conclude that Cingular's potentially dispositive motion for judgment on the pleadings is not moot. Under these particular circumstances, given the unsettled posture of this case, we cannot conclude that the issues presented in Cingular's motion are no longer "live" or that "subsequent events make it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Cleveland Branch, N.A.A.C.P.*, 263 F.3d at 530-31 (internal quotation omitted).

We therefore reverse the district court's finding of mootness and remand for an expedited hearing on the merits of Cingular's motion for judgment on the pleadings. In doing so, we decline Cingular's request that we forgo a remand to the district court and reach the substantive merits of its motion. "We exercise our discretion to rule on an issue not decided below only in 'exceptional cases.'" *St. Marys Foundry, Inc. v. Employers Ins. of Wausau*, 332 F.3d 989, 996 (6th Cir. 2003) (quoting *Estate of Quirk v. Comm'r*, 928 F.2d 751, 756-57 (6th Cir. 1991)). Such exceptional

circumstances are not present here, and we will not usurp the role of the district court to exercise its initial discretion to rule on this pivotal motion. *Id.*

Cingular also requests that, upon remand, we assign this case to a different district court judge. "Although we have the authority pursuant to 28 U.S.C. § 2106 to remand the case to a different district court judge, 'this is an extraordinary power and should rarely be invoked. . . .'" *Brown v. Crowley*, 312 F.3d 782, 791 (6th Cir. 2002) (quoting *Armco, Inc. v. United Steelworkers of Am.*, 280 F.3d 669, 683 (6th Cir. 2002)). Because Cingular has failed to present grounds to question the district court judge's impartiality or his judicial competence, and because the relevant factors militate against removing the original judge from the case, *see id.* at 792, there is absolutely no basis to grant this request.

For the reasons set forth above, we reverse the order of the district court as it pertains to Cingular's motion for judgment on the pleadings, and remand for an expedited hearing and decision on the substantive merits of Cingular's motion.