NOT RECOMMENDED FOR PUBLICATION
File Name: 08a0291n.06
Filed: May 23, 2008

NO. 07-3321

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

CITY OF PARMA, OHIO, on behalf of
itself and all others similarly situated,

              Plaintiff-Appellant,           ON APPEAL FROM THE
v.                                      UNITED STATES DISTRICT
                                        COURT FOR THE NORTHERN
CINGULAR WIRELESS, LLC,          DISTRICT OF OHIO

              Defendant-Appellee.
_____/

BEFORE: GUY, SUHRHEINRICH, and COLE, Circuit Judges.

       SUHRHEINRICH, Circuit Judge.   Defendant-Appellee, Cingular Wireless, LLC

("Cingular"), is a party to a lease agreement ("the Agreement") with Plaintiff-Appellant, City of

Parma, Ohio ("Parma").  The Agreement provides that Cingular may construct and operate a tower

cell site on Parma's property, and that Cingular will pay rent and license fees to Parma for a five-year

renewable term.

       Parma filed a two-count putative class action complaint against Cingular.  The complaint

alleged that Cingular attempted to coerce Parma into reducing rent and licensing fee payments by

threatening to terminate the Agreement.  The first count of the complaint asserted anticipatory breach

of the Agreement; the second count sought a declaratory judgment that Cingular could not terminate

the Agreement.  Cingular filed a motion for judgment on the pleadings and Parma filed a motion for

class certification.

The district court held multiple telephone conference calls with the parties in an effort to broker a settlement. After obtaining the ostensible agreement of the parties to settle, the district court issued a series of orders purportedly resolving the case by agreement of the parties. In light of the parties' apparent agreement, the district court issued an order dismissing the case without prejudice, and denying Cingular's pending motion for judgment on the pleadings as moot. Cingular, however, was dissatisfied with the terms of the settlement, and appealed to this Court, arguing that the district court erred in denying its motion for judgment on the pleadings as moot.

A panel of this court determined that Cingular's motion for judgment on the pleadings was not moot, and "reverse[d] the order of the district court as it pertains to Cingular's motion for judgment on the pleadings, and remand[ed] for an expediting hearing and decision on the substantive merits of Cingular's motion." *City of Parma v. Cingular Wireless, LLC*, 200 Fed. App'x 423 (6th Cir. 2006).

On remand, the district court: (1) granted Cingular's motion for judgment on the pleadings, finding the absence of a case or controversy; (2) denied Parma's motion for class certification as moot; and (3) dismissed the case without prejudice.

Parma appeals the district court's order, arguing that the district court should have entered judgment in its favor on the declaratory judgment claim and granted its motion for class certification. We find no error in the grant of Cingular's motion for judgment on the pleadings for want of a case or controversy. We also find no error in the denial of Parma's motion for class certification, as it was moot prior to class certification. Accordingly, we **AFFIRM**.

**I.**

On July 30, 1997, AT&T Wireless PCS, Inc. ("AWS") entered into a lease agreement (the

"Agreement") with Parma, under which AWS agreed to pay rent and license fees for the operation of a cell site on Parma's property. The Agreement provided for a five-year term, which would automatically renew for subsequent five-year terms unless AWS provided Parma notice of non-renewal prior to the end of the current term.

In 2004, Cingular acquired AWS, and assumed AWS's obligations under the Agreement. As a result of the merger, the combined Cingular and AWS network contained areas of overlapping cellular coverage. Cingular thereafter implemented efforts to reduce the costs of leasing cell cites by negotiating amendments to its lease agreements in areas of overlapping coverage.

On March 10, 2005, a Cingular representative discussed Cingular's desire to amend the Agreement with a Parma representative, and faxed a letter with an attached "term sheet" and "sample amendment." The letter stated:

> As part of the effort to merge the two national networks into one, thousands of cellular antenna sites will be eliminated in areas where there is overlapping coverage between the two companies. Cingular is currently evaluating both its existing and newly acquired sites to determine which are no longer needed as part of the new combined network.
>
> Your site is part of an overlapping coverage area. Cingular plans to terminate approximately half of the sites in your market based on a number of variables, including proximity to other sites as well as the cost of operating the site (e.g. rent, utilities) both now and in the future.
>
> The decision on which sites will be terminated is underway. In order for your site to be considered for inclusion in the new combined network, significant changes need to be made to the existing contract. Cingular intends that the current lease agreement between you and Cingular be amended to include the following terms and conditions attached herewith.
>
> Fortunately, the attached terms will allow your site to strengthen its position to those who are making the final decision.
>
> This effort is urgent. Please review the terms and contact me with any

questions you may have.

The term sheet provided for a reduced rent of $2,250.00 per month, from $4,414.93 per month, and a decreased rate at which the license fee increases per term–to three percent, from fifteen percent. After sending the March 10 letter, Cingular continued to make all rent payments to Parma, and Parma cashed all of Cingular's payments.

On April 18, 2005, Parma responded to the letter by filing an action in Ohio state court asserting anticipatory breach of contract, and seeking a declaratory judgment that the Agreement did not permit termination for overlapping coverage or economic convenience. Parma also moved for certification of a nationwide class of plaintiffs, consisting of landlords that received letters substantially similar to the letter sent to Parma. Parma alleged that the letter was part of Cingular's campaign to reduce its payments on over 15,000 cell site lease agreements by threatening to terminate for overlapping coverage unless its landlords agreed to fifty percent rent reductions.

Cingular removed the case to federal court on the basis of diversity jurisdiction and the Class Action Fairness Act, and Parma filed a motion for class certification under federal law.

Cingular filed a motion for judgment on the pleadings, arguing that no controversy exists because it made no statements that it intended to violate the agreement. Cingular also claimed that Parma failed to assert a claim of anticipatory breach of the Agreement, because the March 10 letter did not state that: (1) Cingular refused to perform its obligations under the Agreement unless Parma accepted Cingular's proposed amendments; (2) Cingular was terminating the Agreement; or (3) Cingular had any intention to terminate the Agreement prior to the end of the current term. In addition, Cingular maintained that, even if the amended complaint sufficiently alleges a claim for anticipatory breech of the Agreement, Cingular's subsequent performance of the Agreement, i.e.,

-4-

uninterrupted rental payments even after sending the letter and initiation of the lawsuit, and Parma's acceptance of Cingular's performance, nullifies any conceivable repudiation.

The district court held a telephone conference and, on July 19, 2005, issued an order entitled "Stipulated Dismissal Without Prejudice," which dismissed the case without prejudice for lack of a case or controversy in light of the parties' apparent agreement with the terms of the order,[1] and denied as moot the parties' pending motions.

On July 25, 2005, Parma received a corrective letter from Cingular dated July 14, 2005, which advised Parma that "while Cingular Wireless LLC does not believe that any of its prior communications have indicated otherwise, Cingular will not terminate the Leases in any manner inconsistent with the terms of the Leases."

Both parties filed motions contesting the terms of the July 19, 2005 order. The district court held another telephone conference, and on August 5, 2005, issued a nunc pro tunc order that superceded the July 19, 2005 order, dismissing the case without prejudice, and denying as moot Cingular's motion for judgment on the pleadings and Parma's motion for class certification.[2]

---

[1] The July 19 order provided that: (1) Cingular would send Parma and all cell site lessors and licensors a letter informing them that Cingular has no intention of terminating the lease or licensing agreement prior to its expiration, other than in accordance with any lease or licensing provision; (2) Cingular would send all cell site lessors and licensors with whom they renegotiated their lease or license after January 1, 2005 a letter informing them that they could reinstate their prior lease or license agreements; (3) Cingular would copy the district court with the two form letters; (4) Cingular would submit to the Court for in camera review the name and location of all lessors and licensors to whom they mailed these form letters; (5) Cingular would send a letter to Parma informing Parma of the number of letters Cingular mailed to its lessors and licensors; and (6) Parma agreed to a dismissal of this case without prejudice.

[2] The August 5 order: (1) modified the description of the recipients of the corrective letters to include only landlords who had received a letter similar to the March 10 letter; (2) omitted references to any agreement or stipulation by Parma to the dismissal; (3) acknowledged the district court's receipt of Cingular's proposed corrective letters; (4) directed Parma to submit

The district court held another telephone conference and, on August 16, issued an order setting a September 7, 2005 deadline for Cingular to send corrective letters to landlords that received letters similar to the March 10, 2005 letter received by Parma.[3]

This Court subsequently considered Cingular's appeal, in which Cingular argued, inter alia, that the district court erred in denying its motion for judgment on the pleadings as moot. *City of Parma v. Cingular Wireless, LLC*, 200 Fed. App'x 423 (6th Cir. 2006). We reversed the district court's finding of mootness with respect to Cingular's motion for judgment on the pleadings, and, because we declined to consider the merits of Cingular's motion for judgment on the pleadings, remanded for an expedited hearing on the merits of Cingular's motion. *Id*. at 429.

On remand, the district court held a telephone conference and, on October 17, 2006, issued an order setting forth its findings that: (1) Cingular continued to make its monthly payments to Parma since March of 2005; (2) Parma continued to cash those checks; (3) Cingular had not breached any of its obligations under the Agreement in any manner; and (4) the then-current term of the Agreement would expire in July of 2007. The district court directed the parties to file briefs with the court addressing whether a case or controversy exists between the parties, and scheduled an oral hearing on Cingular's motion for judgment on the pleadings.

---

proposed corrective letters to the court no later than August 15, 2005; (5) stated that the district court would then draft proposed corrective letters to be discussed by the court and the parties at a subsequent conference call to be held on August 16, 2005; and (6) directed Cingular to submit to the court "all versions of the March 10, 2005 letter received by Parma, which Cingular sent to other cell site lessors and licensors."

[3]The August 16 order further instructed Cingular to report the names and addresses of recipients of the corrective letters to the court, to submit a report of all licensors who requested reinstatement of their prior licensing agreements, and to report to Parma the actual number of corrective letters sent to these licensors.

On November 2, 2006, the district court held an oral hearing on Cingular's motion for judgment on the pleadings and, on November 3, 2006, issued an order granting Cingular's motion, and dismissing the case without prejudice for lack of subject matter jurisdiction on the basis that there is no case or controversy. The district court also dismissed Parma's motion for class certification as moot. Parma filed a motion for reconsideration, which was denied by the district court.

## II.

We first address Parma's argument that the district court erred in granting Cingular's motion for judgment on the pleadings for want of a case or controversy. We review a district court's grant of a motion for judgment on the pleadings de novo. *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). The issue of whether a case or controversy exists for adjudication is a question we review de novo. *N. Am. Natural Res., Inc. v. Strand*, 252 F.3d 808, 812 (6th Cir. 2001).

During the course of prior proceedings, Parma alleged that Cingular threatened to terminate the Agreement for overlapping coverage or economic convenience, and sought a declaratory judgment that Cingular could not terminate the agreement for those reasons.

Parma argues that at the oral hearing on Cingular's motion for judgment on the pleadings, on November 2, 2006, Cingular admitted for the first time that "it cannot terminate its contract with Parma for cell site coverage overlap or economic convenience," and quotes the following exchange:

> [District court]: Okay. That's what -- okay. Now, what I want to know, Mr. McCaffrey and Ms. Kirshner, is Cingular asserting it has that right?
>
> [Counsel for Cingular]: No, your Honor. We have never -- the March 10th letter does not say that we are terminating the license agreement for overlap or economic convenience. We have never taken that position, your Honor.
>
> [District court]: All right. I understand you're saying the March 10th letter.

-7-

I don't want to litigate what the -- what the letter says or doesn't say. And I should say for it -- when I referred to oral or written communications, one of the -- one of the written communications was a March 10th letter from an agent or representative, Cingular to Parma, that I felt was ambiguous. All right. Putting aside the letter, the question is today, November 2, 2006, does -- is Cingular maintaining it has a right to terminate the lease for overlap or business convenience?

[Counsel for Cingular]: No, no, your Honor.

[District court]: All right.

[Counsel for Cingular]: We do not have that right with the lease with Parma.

Parma contends that Cingular's position during the exchange ran counter to its previous position taken during the litigation, and constituted a binding judicial admission that Cingular could not terminate the Agreement for coverage overlap or economic convenience. According to Parma, that admission entitled Parma to judgment in its favor with respect to its declaratory judgment claim.

The district court, however, found that the parties never disputed their interpretation of the Agreement, because: (1) during the course of the litigation, Cingular never asserted that it could terminate the Agreement for coverage overlap or economic convenience; (2) Cingular's July 14, 2005 letter to Parma stated that it "will not terminate the Leases in any manner inconsistent with the terms of the Leases"; and (3) Cingular affirmatively stated at the November 2, 2006 hearing that it had no right to terminate the Agreement due to coverage overlap or economic convenience. The district court held that dismissal was warranted given the absence of a case or controversy. We agree.

Ohio law permits individuals to pursue declaratory judgments, *see* Ohio Rev. Code § 2721.01 et seq., for purposes that include the determination of "question[s] of construction" under a contract. Ohio Rev. Code § 2721.03. A declaratory judgment in federal court must still present a justiciable controversy. *See* 28 U.S.C. § 2201 ("In a case of *actual controversy* within its jurisdiction . . . any

-8-

court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.") (emphasis added). In order to satisfy this threshold requirement regarding a declaratory judgment claim, Parma must demonstrate that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *United States v. I.C.C.*, 337 U.S. 426, 430-431 (1949) ("[C]ourts must look behind names that symbolize the parties to determine whether a justiciable case or controversy is presented.").

By focusing its arguments as to whether the parties disputed their interpretation of Agreement at prior stages of the litigation, Parma misunderstands the case or controversy requirement. A court looks not to whether the parties once satisfied the requirement, but whether there is an *existing* case or controversy. *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969) ("The proper inquiry [is] whether a 'controversy' requisite to relief under the Declaratory Judgment Act exist[s] at the time of the hearing [on the claim for declaratory judgment]."); *Midwest Media Property, L.L.C. v. Symmes Tp., Ohio*, 503 F.3d 456, 460 (6th Cir. 2007) ("Even when an action presents a live case or controversy at the time of filing, subsequent developments . . . may moot the case."); *Schepp v. Fremont County*, 900 F.2d 1448, 1452 (10th Cir. 1990) ("In determining whether [the plaintiff] is entitled to declaratory relief, we look beyond the initial controversy which may have existed at one time; rather, we must decide whether . . . there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.") (citations, quotations marks, and alterations omitted).

At the time of the hearing on November 2, 2006, the parties did not dispute their

interpretation of the Agreement. Parma contended that the Agreement did not permit termination for overlapping coverage or economic convenience. Cingular contended the same, as established by the oral representations of counsel for Cingular. Thus, Parma seeks a declaratory judgment memorializing the parties' agreed-upon interpretation of the Agreement. In the absence of a real dispute, however, such relief would constitute an advisory opinion, forbidden under Article III of the Constitution. *See* U.S. Const., art. III, § 2, cl.1; *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002). Even if a controversy existed when Parma filed suit, Cingular's contentions on November 2, 2006 demonstrate its subsequent absence. *See* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2757 (3d ed. 1998) ("It is not enough that there may have been a controversy when the action was commenced if subsequent events have put an end to the controversy, or if the opposing party disclaims the assertion of countervailing rights."). And if Parma's efforts to secure a declaratory judgment are for the purpose of exacting attorney's fees, that interest alone will not suffice to satisfy the case or controversy requirement. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("An interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." (citation and quotation marks omitted)). Accordingly, we hold that the district court did not err in granting Cingular's motion for judgment on the pleadings for want of a case or controversy.

**III.**

Parma also appeals the district court's denial of its motion for class certification, which the district court determined to be moot. We review a district court's denial of class certification for an abuse of discretion. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003).

This Court has previously explained that "[o]nce a class is certified, the mooting of the

named plaintiff's claim does not moot the action, the court continues to have jurisdiction to hear the merits of the action if a controversy between any class member and the defendant exists." *Brunet v. City of Columbus*, 1 F.3d 390, 399 (6th Cir. 1993) (citing *Sosna v. Iowa*, 419 U.S. 393, 399 (1975)). However, where "the named plaintiff's claim becomes moot before certification, dismissal of the action is required." *Brunet*, 1 F.3d at 399 (citing *Bd. of Sch. Comm'rs v. Jacobs*, 420 U.S. 128, 129 (1975)). This case presents the latter circumstance, given that Parma's claim became moot *before* certification; thus, dismissal "is required." *Brunet*, 1 F.3d at 399. Accordingly, no abuse of discretion resulted from the district court's denial of Parma's motion for class certification.

## IV.

For the reasons set forth above, we **AFFIRM**.